DETZUR v. B. STROH BREWING CO.[1]

1. NEGLIGENCE—FALLING GLASS—QUESTION FOR JURY.
   Plaintiff was injured by the falling of a piece of glass from an upper window in defendant's building, which stood close to the public street. There was evidence tending to show that the pane of glass had been for some time in such a shattered condition as to render it likely that pieces would readily be shaken out. There was no unusual wind on the day of the accident. *Held*, to support a finding of negligence.

2. SAME—PROXIMATE CAUSE—ORDINARY WIND.
   An owner's negligence in maintaining a window above a public street in such a shattered condition as to render it likely to fall and injure pedestrians is the proximate cause of an accident so occurring, although an ordinary wind may operate as a concurring circumstance to dislodge the glass.

3. SAME—EVIDENCE—OPINIONS OF WITNESSES.
   While a witness may testify to circumstances coming under his observation which tend to show that a window above a sidewalk was maintained in a condition dangerous to pedestrians, as, for example, that he had noticed a hole in the glass, and had heard the rattling of the panes, it is not competent for him to draw the inference on the stand that the window was in fact unsafe.

4. SAME — OBJECTION ON WRONG GROUND — EXPERT KNOWLEDGE.
   But a reversal will not be granted on account of the admission of such testimony, where the objection at the trial was that the witness was not shown to be an expert, since, conced_

---

[1] Rehearing denied May 23, 1899.

ing its admissibility, no special qualifications on the part of the witness would be required.

5. EVIDENCE—SUFFICIENCY OF OBJECTIONS—HYPOTHETICAL QUESTIONS.

An objection that a hypothetical question is incompetent does not raise the point that the question is not in proper form because it includes the witness' understanding of the testimony of another witness.

6. SAME.

The overruling of an objection to the admission of testimony will not justify a reversal where the form of the objection was such as to leave the trial court unadvised as to the ground on which it was based. So *held*, in an action for personal injuries, where testimony tending to show that the president of the defendant corporation had admitted the company's negligence was objected to as "incompetent," without the statement of any specific ground.

7. PERSONAL INJURIES—DAMAGES—EXCESSIVE JUDGMENT.

A judgment of $3,500 damages for an arm permanently stiffened is not so clearly excessive that it will be interfered with on appeal.

8. SAME—NEW TRIAL—REMITTING VERDICT.

A new trial in an action for personal injuries may be made dependent upon plaintiff's refusal to remit a portion of his verdict.

Error to Wayne; Smith (George W.), J., presiding. Submitted November 22, 1898. Decided January 20, 1899.

Case by Augusta Detzur, an infant, against the B. Stroh Brewing Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*Henry M. Duffield* (*Thomas S. Jerome*, of counsel), for appellant.

*James H. Pound*, for appellee.

HOOKER, J. The plaintiff was injured by a piece of glass, which fell from a window of the defendant's building, cutting her arm severely, and permanently impairing its

use, according to some of the testimony in the case. There is testimony upon the part of the plaintiff tending to show that a round window in the upper story was broken for some days or weeks before the accident, and that it was a piece of glass from this window which injured the plaintiff. The defendant offered testimony tending to show that there was no broken window in the building on the day before the accident, and that the glass causing the injury came from a square window, in a lower story, and its fall was caused by a high wind blowing at the time. The theory of the only count relied upon is that the defendant created and maintained a nuisance, in an insecurely fastened and broken window sash and glass, whereby the plaintiff was injured. A verdict of $10,000 was rendered in behalf of the plaintiff. A motion being made for a new trial, the court denied the same, upon condition that the plaintiff remit the sum of $6,500 from the verdict, which was done. The defendant has brought error.

Error was assigned upon the refusal of the court to charge the jury that there was no evidence of negligence. It is urged that it cannot be inferred from the mere fact that there was an accident. There is testimony tending to prove that there was a broken window; that, immediately before the accident, a window or glass was heard rattling, and the witness looked up, and saw triangular pieces of glass falling from the window, which she had previously seen in a broken condition; that several pieces fell to the sidewalk; and that it was a pleasant day, with but little wind. The window was 50 or 60 feet from the ground, in a building that stood but a few feet from the street. If it is true that a pane of glass was shivered, as, we think, there was some testimony tending to show, we cannot say that a jury could not legitimately find that it was negligence to leave it in that condition until the action of the elements loosened it, and caused it to fall. It is true that, where there is no evidence suggestive of a negligent cause, no recovery should be allowed upon a charge of negligence; but this is not such a case. Circumstances

consistent with the plaintiff's theory are found in the case, and offer a reasonable opportunity for the inference that the injury resulted from a careless disregard of the broken and loosened condition of glass in a window above a street where pedestrians were frequently passing.

Counsel say that it is common knowledge that there is nothing dangerous in itself in a broken windowpane. We know that it is common to see cracked and broken windows, and we recognize the fact that some of them are considered safe; but others are sometimes seen which are so palpably unsafe, because of the apparent danger of the pieces falling or being shaken out when the sash is shaken by wind or otherwise, that they may well be considered dangerous. As we cannot say that all cracked windows are safe, we must submit the question to the jury, when the testimony tends to show a condition of the window indicating danger.

In this connection we will mention the question of proximate cause. Counsel contend that, if the glass fell by means of its being dislodged by the wind, the negligence of the defendant was not the proximate cause of the injury, and they complain of a refusal to instruct the jury that in such event the plaintiff should not be allowed to recover. The negligence complained of is the maintenance of a window in such a condition that the glass was liable to fall out; not necessarily from its own weight, but under the natural conditions and strain to which it was likely to be subjected. It might not be negligent to leave a broken pane, if assurance could be given that it would be undisturbed by wind or by use. But wind is an every-day occurrence. It is a condition, not necessarily a cause, and one which should be taken into consideration before determining that a broken glass is not likely to fall. The wind may have been a concurring circumstance, but it cannot be said to have been the proximate cause, and the broken glass the remote cause. It cannot be true that a defendant who is liable if a defective glass falls from its own weight on a quiet day is to be relieved from respon-

sibility because its fall is due to the pressure of a wind which should have been anticipated.

The testimony of two witnesses was relied upon to prove that a round window in the upper story had been broken for some time. One of these witnesses testified that she had noticed the window before; that it had a hole in it, etc.; she had noticed the rattling of these panes. She was then asked:

"*Q.* Will you state as to whether or not, before this, when you would hear this rattling, whether you thought that was a safe window or not?
"*A.* No, sir."

The testimony was inadmissible. If we overlook the fact that the question did not ask her to state her opinion upon oath, but called merely for a previously existing opinion, and assume that she meant to give it as her opinion at the time of the trial that the glass was unsafe, such testimony was incompetent. It was proper for her to state the condition of the window, and the circumstances which came under her observation; but it was for the jury to draw inferences and conclusions as to danger or safety. The condition of this window as to safety was one of the principal points in the case. Upon the unsafe condition of this window the case may be said to have hinged. Analogous questions have been passed upon repeatedly by us, as shown by the cases cited in the brief of counsel.[1] But the objection now urged was not made, and it is fair to presume that the trial court did not consider it. The reason given for the objection was that she was not

[1] To this point counsel cited *Marcott* v. *Railroad Co.,* 49 Mich. 99; *Jones* v. *Railway Co.,* Id. 573; *Cook* v. *Johnston,* 58 Mich. 437 (55 Am. Rep. 703); *Lemon* v. *Railway Co.,* 59 Mich. 618; *Passmore* v. *Passmore's Estate,* 60 Mich. 463; *Anderson* v. *Boom Co.,* 61 Mich. 489; *Smith* v. *Township of Sherwood,* 62 Mich. 159; *Harris* v. *Township of Clinton,* 64 Mich. 447 (8 Am. St. Rep. 842); *Zube* v. *Weber,* 67 Mich. 52; *Ireland* v. *Railroad Co.,* 79 Mich. 163; *Kelley* v. *Railroad Co.,* 80 Mich. 237 (20 Am. St. Rep. 514); *Langworthy* v. *Township of Green,* 88 Mich. 207; *Girard* v. *City of Kalamazoo,* 92 Mich. 610; *Lewis* v. *Bell,* 109 Mich. 189; *Smaltz* v. *Boyce,* Id. 382; *Atherton* v. *Village of Bancroft,* 114 Mich. 241.

shown to be an expert. The court probably considered it a matter requiring no special qualification, and in this he was right; and we can hardly believe that he would have admitted the testimony had the objection been made which was made in this court.

Again, error is assigned upon a hypothetical question asked a medical expert. The objection appearing upon the record is that it was incompetent, which did not advise the court that the form of the question was objectionable. The precise point argued here is that the question made the witness' understanding of the testimony of another witness a part of the question,—a practice which has been criticised by this court, though permitted in some States. See *People* v. *Aikin*, 66 Mich. 476 (11 Am. St. Rep. 512); *Kempsey* v. *McGinniss*, 21 Mich. 138; Lawson, Exp. Ev. 144 *et seq.*

Error is also assigned upon the introduction of admissions of Bernard Stroh, the president of the company, who' is said to have stated to the plaintiff's mother, in an interview some hours after the accident, that the windows were defective. Objections were made to the questions, but no ground whatever was stated in two instances. A third objection to this testimony is based upon the ground of incompetency. While there may be cases in which a court could not fail to understand the point relied upon, even under so general an objection as incompetency, there are others where such an objection would not even suggest the real objection. In this case it might have been intended to mean that the president had no authority to negotiate a settlement, or that he was not engaged in a negotiation for that purpose, and, therefore, that he was not acting in the company's business, or that, the admission being made in an attempt to compromise the matter, it should not be treated as an admission. If anything is settled by our decisions, it is that, unless an objection clearly advises the trial court of the specific ground upon which it is made, it will not justify a reversal. Among the cases supporting this rule are the following: *Rash* v.

*Whitney*, 4 Mich. 495; *Hoard* v. *Little*, 7 Mich. 468; *Young* v. *Stephens*, 9 Mich. 507; *Morrissey* v. *People*, 11 Mich. 332; *Hollister* v. *Brown*, 19 Mich. 166; *Gilbert* v. *Kennedy*, 22 Mich. 117; *Snyder* v. *Willey*, 33 Mich. 490; *Campbell* v. *People*, 34 Mich. 351; *Ward* v. *Ward*, 37 Mich. 259; *Stevens* v. *Hope*, 52 Mich. 69; *Merkle* v. *Township of Bennington*, 68 Mich. 144; *Jennison* v. *Haire*, 29 Mich. 207; *Heymes* v. *Champlin*, 52 Mich. 25; *Jochen* v. *Tibbells*, 50 Mich. 33; *Bulen* v. *Granger*, 63 Mich. 311; *Abbott* v. *Chaffee*, 83 Mich. 256; *People* v. *Moore*, 86 Mich. 134; *Hutchinson* v. *Whitmore*, 95 Mich. 592; *Seventh-Day Adventist Pub. Ass'n* v. *Fisher*, Id. 274; *People* v. *Durfee*, 62 Mich. 491.

A motion for a new trial was made upon the following grounds:

1. The damages are excessive.
2. The damages are so excessive as to evince passion, prejudice, partiality, or corruption of the jury.
3. The verdict is against the weight of evidence.

The court found that the damages were excessive; that they were not so excessive as to evince passion, prejudice, or corruption, and that they do not exist; that the jurors were so moved by sympathy for the plaintiff, and by their common knowledge of the financial ability of the defendant, and their belief of large amounts expended by the defendant for medical expert evidence, as to have awarded a larger amount than they otherwise would have done, and to that extent partiality is found; that the verdict is not contrary to, or against the weight of, the evidence. An order was then made ordering a new trial, unless $6,500 should be remitted from the verdict. Error is assigned upon this order. Counsel argue that $3,500 is excessive damage for a stiff arm; but we cannot say that it is so clearly excessive as to justify our interference upon that ground. We are also of the opinion that making a new trial dependent upon a refusal to remit a portion of the verdict in cases of this kind is a well-settled practice in this State, where, as in this case, the amount

of unliquidated damage is the only question involved. It has always been considered lawful for the trial judge in such a case to set aside a verdict as excessive; and it has been a common practice to grant a portion of the relief asked by requiring a remission of a portion of the verdict as a condition upon which the new trial will be denied. This has always been a matter of discretion, and, where it is not clearly erroneous, the action of the trial court should not be disturbed.

Several other questions are raised, but our investigation of them leads to the conviction that they do not furnish a ground for reversal of the case.  We think it unnecessary to discuss them.  The jury found a cause of action, and that left merely the question of the amount of damages to be awarded.  These involved pain and suffering, and prospective as well as past deprivation of the use of the arm.  Such damages are not altogether a matter of mathematical computation, but they are determined by the concensus of opinion of the jury, acting under the direction of the judge.  The question of new trial was within the discretion of the court.

The judgment of the circuit court is affirmed.

The other Justices concurred.